# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| AMANDA AARON and HEATH AARON, as the parents and next friends of AUSTIN AARON, a deceased minor, <br><br> Plaintiff, <br> v. <br><br> BLAKE CARTER HUDSON, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) 6:21-cv-01058-LSC ) ) ) ) ) ) ) ) |

## Memorandum of Opinion

Plaintiffs Amanda and Heath Aaron bring this action on behalf of their deceased son Austin Aaron ("Aaron") against Defendants former Walker County Sheriff Deputy Blake Carter Hudson ("Hudson") and Walker County Sheriff Nick Smith ("Smith"). Count One alleges that Hudson used excessive force while arresting Aaron in violation of the Fourth Amendment. Count Two alleges that Hudson failed to provide or request medical care for Aaron following the crash in violation of the Fourth and Fourteenth Amendment. Count Four[1] alleges that Hudson wrongfully caused the death of Aaron in violation of Alabama Code § 6-5-

---

[1] Plaintiffs' complaint does not contain a Count Three.

391. Count Five alleges that Smith is liable for Hudson's conduct as his supervisor under 42 U.S.C. § 1983 ("§ 1983"). Count Six alleges that Smith wrongfully caused the death of Aaron in violation of Alabama Code § 6-5-391. Presently before the Court are Defendant Smith's Motion to Dismiss (Doc. 4) and Defendant Hudson's Motion to Dismiss (Doc. 15). The motions are fully briefed and ripe for review. For the reasons stated below, Defendant Smith's Motion to Dismiss (Doc. 4) is due to be GRANTED and Defendant Hudson's Motion to Dismiss (Doc. 15) is due to be GRANTED IN PART and DENIED IN PART.

I.   Background[2]

On August 2, 2019, at approximately 10:51 P.M., Aaron was operating a 2005 Honda Rincon all-terrain vehicle ("ATV") at or near the intersection of Alabama Highway 69 and Old Tuscaloosa Road in Walker County, Alabama. (Doc. 1 at ¶ 10). Aaron, his brother, and some friends ventured into the intersection. (*Id.* at ¶ 11). Hudson struck the ATV that Aaron was operating with a 2015 Chevrolet Tahoe owned by the Walker County Sheriff's Department. (*Id.* at ¶12). Plaintiffs allege that at the time of the incident, Hudson was wearing a Walker County Sheriff's deputy

---

[2] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (quoting *Ironworkers Loc. Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)). The following facts are, therefore, taken from the allegations contained in Plaintiff's Complaint, and the Court makes no ruling on their veracity

uniform, driving the Tahoe at a high rate of speed without any lights on, and was intoxicated. (*Id.* at ¶ 15). The collision threw Aaron from his ATV into a ditch. (*Id.* at ¶ 18). Hudson allegedly did not get out of the Tahoe and failed to provide any medical care. (*Id.*) Aaron died of the injuries he suffered in the crash on August 5, 2019. (*Id.* at ¶ 19).

## II. Standards of Review

### A. 12(b)(6)

To withstand a 12(b)(6) motion a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1207 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court next "assume[s] the veracity" of all well-pleaded factual allegations and determines whether those allegations "plausibly give rise to an entitlement to relief." *Id.* Only the complaint itself and any attachments thereto may be considered, even when the parties attempt to present additional evidence. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014); *see also* Fed. R. Civ. P. 12(d).

### B. Qualified Immunity

"The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). The qualified immunity analysis does not take into account an officer's alleged subjective intent; instead, it "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* Thus, to overcome a public official's entitlement to qualified immunity, a plaintiff must be able to establish not only that the public official acted wrongfully, but also be able to point the court to law existing at the time of the alleged

4

violation that provided "fair warning" that the conduct of the defendants was illegal. *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003).

To be eligible for qualified immunity, the officers must demonstrate that they were acting in the scope of their discretionary authority. *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004). "To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'" *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). "[T]he determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." *Godby v. Montgomery County Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

### III. Discussion

#### A. Count One: Excessive Force

Plaintiffs contend that Hudson violated Aaron's Fourth Amendment right to be free from excessive force. (Doc. 21 at 3–7.) Hudson argues that Plaintiffs have failed to state a cognizable claim under the Fourth Amendment. (Doc. 22 at 3–5.). Plaintiffs cannot maintain an excessive-force claim under the Fourth Amendment unless they have alleged a legally cognizable "seizure." *Troupe v. Sarasota County*, 419 F.3d 1160, 1166 (11th Cir. 2005), *cert. denied*, 547 U.S. 1112, 126 S.Ct. 1914, 164

L.Ed.2d 664 (2006). A violation of the Fourth Amendment requires an intentional acquisition of physical control. *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). "It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Id.* at 596–97.

Although *Brower* states that "[a] seizure occurs even when an unintended person or thing is the object of the detention or taking," the cases cited in support of this proposition concern situations where the police, based upon mistaken beliefs, intentionally directed their actions at the person asserting a Fourth Amendment violation. 489 U.S. at 596, (citing *Hill v. California,* 401 U.S. 797, 800–05 (1971); *Maryland v. Garrison,* 480 U.S. 79, 85–90, (1987)). For instance, in *Hill,* the police intentionally seized and searched the person claiming a Fourth Amendment violation, mistakenly believing him to be a different person for whom they had an arrest warrant. 401 U.S. at 802–05. Thus, even when a person is the unintended object of the seizure, they must still be the intended object of some government action or physical restraint. *See Ansley v. Heinrich,* 925 F.2d 1339, 1344 (11th Cir.

6

1991) ("[U]nintended consequences of government action [can] not form the basis for a fourth amendment violation."); *Landol–Rivera v. Cosme,* 906 F.2d 791, 795 (1st Cir. 1990) ("The Supreme Court in *Brower*, carefully distinguished between police action *directed toward* producing a particular result—in Fourth Amendment parlance, 'an intentional acquisition of physical control'—and police action that simply *causes* a particular result.").

Here, Plaintiffs have adequately alleged a Fourth Amendment excessive force claim. Plaintiffs allege that Hudson rammed into the ATV that Aaron was riding at a high rate of speed, thus terminating his freedom of movement. (Doc. 1 at ¶ 15). Plaintiffs allege that "Mr. Hudson intentionally used force" upon Aaron. (*Id.* at ¶ 29). Plaintiffs further allege that the Tahoe was used as a weapon when striking Aaron. (*Id.*) As such, whether Aaron was an intended object of the seizure or not, Plaintiffs have alleged he was the intended object of some intentional government action. Therefore, Plaintiffs have adequately stated a Fourth Amendment excessive force claim. Accordingly, Hudson's Motion to Dismiss is due to be DENIED as to Count One.

### B. Count Two: Failure to Provide Medical Care

Plaintiffs contend that Hudson's failure to personally provide medical care to Aaron violated Aaron's Fourteenth Amendment right to medical care. (Doc. 21 at

7–13.) Hudson argues he is entitled to qualified immunity as to the claim in Count Two only. (Doc. 16 at 11.) Here, Plaintiffs do not dispute that Hudson was engaged in a discretionary function at the time of the incident. (Doc. 21 at 7–13.) As such, the following two-part test determines whether qualified immunity applies: first, the court determines whether there was a constitutional violation; second, the court determines whether the constitutional right in question was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In *Pearson v. Callahan*, the Court abandoned the rigid order of analysis enunciated in *Saucier* and left it to the district courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 236 (2009).

A constitutional right may be clearly established in one of three ways: case law with materially similar facts establishing the conduct as illegal, a broad statement of principle in the Constitution, a statute, or case law that clearly establishes the constitutional right, or conduct so egregious that a constitutional right was clearly violated in the absence of case law. *Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013). Case law may clearly establish a constitutional right only if it comes from the United States Supreme Court, the Eleventh Circuit, or the highest court of the state where the case arose. *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 827

n.4 (11th Cir. 1997). A clearly established constitutional right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. *Young v. Borders*, 850 F.3d 1274, 1282 (11th Cir. 2017).

Even if Hudson violated Aaron's constitutional right to medical care, that right was not clearly established. Plaintiffs cite one case, *Olson v. Barrett*, No. 6:13-cv-1886-Orl-40KRS, 2015 WL 1277933 (M.D. Fla. Mar. 20, 2015), for the assertion that the general right to medical care from a government agent is clearly established. Plaintiffs argue only that Hudson's conduct was so egregious that it clearly violated Aaron's constitutional rights. However, Plaintiffs' reliance on *Olson* is misplaced. *Olson* is distinguishable from the present case because the officers in *Olson* not only failed to personally provide medical care but failed to request emergency services, prevented bystanders from providing care, and cancelled emergency assistance that had already been called. *See Davis v. Edwards*, No. 3:16-cv-855-CDL-DAB, 2017 WL 6544847 at *8 (M.D. Ala. Sept. 5, 2017). Further, two other District Courts within the Eleventh Circuit have held within the past five years that when an officer injures a suspect during an arrest, the suspect's Fourteenth Amendment rights require only that the responsible officer call for medical assistance. *Id.; Peacock v. Smith*, No. 5:18-cv-00284-TES, 2018 WL 5649899 at * 4–7 (M.D. Ga. Oct. 31, 2018).[3] Given that all

---

[3] Plaintiffs have not brought a claim for failure to call for emergency services.

9

relevant and binding case law holds there is no obligation for a police officer to personally provide medical care, it cannot be said that the constitutional right in question was clearly established. 533 U.S. at 201 (2001). As this was brought as a failure to personally provide medical care claim, Hudson's Motion to Dismiss (Doc. 15) is due to be GRANTED as to Count Two based on qualified immunity.

### C. Count Four: Wrongful Death

Plaintiffs allege that Hudson wrongfully caused the death of Aaron in violation of Alabama Code § 6-5-391. (Doc. 1 at ¶¶ 37–41). Hudson argues he is entitled to state immunity on this claim. (Doc. 16 at 17). Sheriffs are granted absolute immunity from lawsuits when "acting within the line and scope of their employment." Ala. Const. Art. 1 § 14; *Ex parte Sumter County*, 953 So. 2d 1235, 1239 (Ala. 2006). This immunity bars state-based tort claims against sheriffs in Alabama. *See e.g., Timney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996); *Ex parte Blankenship*, 893 So. 2d 303, 305 (Ala. 2004); *Ex parte Haralson*, 871 So. 2d 802, 807 (Ala. 2003). This State immunity also applies to deputies who are "acting within the line and scope of their employment." *Ex parte Sumter County*, 953 So. 2d at 1239.

Here, Plaintiffs have alleged that Hudson was wearing a Walker County Sheriff's deputy uniform and driving a 2015 Chevrolet Tahoe Patrol Vehicle owned by the Walker County Sheriff's Office at the time of the crash. (Doc. 1 at ¶ 7).

However, Plaintiffs also allege that Hudson was driving drunk and intentionally hit Aaron. As a result, it appears that Plaintiffs are alleging that Hudson was not acting within the line and scope of his employment. Whether Hudson was acting within the line and scope of his employment will be best decided either at trial or through an appropriately filed summary judgment motion. Accordingly, Hudson's Motion to Dismiss (Doc. 15) is due to be DENIED at this time as to Count Four.

### D. Count Five: Supervisory Liability

In Count Five, Plaintiffs allege that Smith's failure to supervise Hudson caused Hudson to violate Aaron's Fourth Amendment right to be free from excessive force during an arrest. (Doc. 1 at ¶¶ 42–46). Smith asserts that he is entitled to qualified immunity on this claim. (Doc. 5 at 9). Here, liability, if at all, arises from Smith's role as Sheriff of Walker County. As such, Smith was acting within the scope of his discretionary authority. Since Smith was acting within his discretionary authority, the earlier described two-part test determines whether qualified immunity applies.

Plaintiffs' claims against Smith are not based upon personal participation but are based upon his position as Sheriff of Walker County. As such, Plaintiffs' theory is one of supervisory liability. While supervisory officials are generally not liable for the unconstitutional acts of their subordinates, they may be liable under § 1983 where

11

the supervisor personally participates in the alleged unconstitutional conduct or when the supervising official causes his subordinate to commit the unconstitutional act. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2013). Plaintiffs allege that Smith failed to prevent Hudson from committing these acts. (Doc. 9 at 9). Thus, Smith is liable for these alleged constitutional violations only if Plaintiffs have alleged facts creating a causal connection between Smith's actions and Hudson's deprivation of Aaron's rights. For the following reasons, they have not.

To show a causal connection, a plaintiff must allege facts showing either that: (1) the supervisor had notice of a widespread history of abuse which he failed to correct, (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights, or (3) the facts support an inference that the supervisor directed his subordinate to act unlawfully or knew that they would do so and failed to stop them. *Cottone*, 326 F.3d at 1234–35.

Plaintiffs have alleged no facts which would establish a causal connection between Smith's actions and Hudson's deprivation of Aaron's right to be free from excessive force during an arrest. Plaintiffs have not alleged a widespread history of abuse or custom or policy that resulted in deliberate indifference. Plaintiffs do allege that "Mr. Smith knew or should have known of Mr. Hudson's propensities and dangers of providing him permissive use of the Tahoe or other similar motor

vehicles." (Doc. 1 at ¶ 42). However, this is a conclusory allegation that is not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 679. Ultimately, Plaintiffs fail to allege any specific facts giving rise to an inference that Smith knew or should have known of Hudson's "propensities and dangers." As such, Plaintiffs have failed to allege a causal connection between Smith's actions and Hudson's deprivation of Aaron's Fourth Amendment rights. Therefore, Smith is entitled to qualified immunity as to any supervisory liability claim regarding Aaron's alleged Fourth Amendment violation. Accordingly, Smith's Motion to Dismiss (Doc. 4) is due to be GRANTED as to Count Five.

### E. Count Six: Wrongful Death

Plaintiffs allege that Smith wrongfully caused the death of Aaron in violation of Alabama Code § 6-5-391. (Doc. 1 at ¶¶ 47–53). Smith argues that Plaintiffs lack standing to bring this claim and that he is entitled to state immunity. (Doc. 5 at 19–21).

#### i. Standing

The Court must first address standing because this Court would not have subject matter jurisdiction over this claim should Plaintiffs lack standing. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). Alabama's wrongful death of a minor statute allows the parents of a deceased minor to bring suit on the minor's behalf and

states that "if they decline to commence the action, or fail to do so, within six months from the death of the minor, the personal representative of the minor may commence an action." Ala. Code § 6-5-391. Smith contends that this language means that only the minor's personal representative, and not the minor's parents, may bring suit once six months have elapsed from the minor's death. As more than six months elapsed between Aaron's death and Plaintiffs' filing this suit, Smith contends that Plaintiffs lack standing to bring this claim. Smith is mistaken. In *Oden v. Pepsi Cola Bottling Co.*, the Alabama Supreme Court stated that a parent may file suit under § 6-5-391 as a parent or as an administrator of the minor's estate. 621 So. 2d 953, 954 n.1 (Ala. 1993). As a result, this Court concludes that § 6-5-391 does not deprive parents of the right to bring suit after six months, but instead opens eligibility to the minor's personal representative as well as the minor's parents. Plaintiffs thus have standing to bring suit under § 6-5-391.

### ii. State Immunity

Here, liability, if at all, arises from Smith's role as Sheriff of Walker County. As such, Smith was necessarily acting within the line and scope of his employment and would be entitled to state immunity. Ala. Const. Art. 1 § 14; *Ex parte Sumter County*, 953 So. 2d at 1239. However, the Alabama Supreme Court has recognized several exceptions to § 14 immunity. In *Poiroux v. Rich*, 150 So. 3d 1027, 1038 (Ala.

2014), the court articulated five categories of cases from which sheriffs are not immune:

> [Actions brought] (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

*Id.* (internal quotation marks omitted) (quoting *Ex parte Donaldson*, 80 So. 2d 895, 898 n.1 (Ala. 2011)). Separately, the court has articulated six categories of cases from which state officials are not immune. *Ex parte Moulton*, 116 So. 3d 1119, 1141 (Ala. 2013). Only the sixth category is relevant to this case:

> (6)(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, and (b) **actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law**, subject to the limitation that the action not be, in effect, one against the State.

*Id.* (emphasis added) (internal quotation marks and citations omitted).

Plaintiffs argues that their individual capacity claim falls within the sixth category articulated in *Ex parte Moulton*, and therefore, is not barred by sovereign immunity. Smith argues that the damages portion of the sixth category is inapplicable to Alabama sheriffs, citing *Poiroux*'s omission of individual capacity "bad faith" damages claims from the list of exceptions to sovereign immunity for sheriffs. Upon

15

review, this Court concludes that the sixth exception as stated in *Ex parte Moulton* is inapplicable to sheriffs. *Ex parte Moulton* is not a case involving a sheriff. This Court finds *Poiroux*, a case involving a sheriff, to be controlling on this question. Plaintiff's claims against Smith are for monetary damages and do not fall within one of *Poiroux*'s exceptions to sovereign immunity for sheriffs. *See Poiroux*, 150 So. 3d at 1038. Thus, Smith is entitled to sovereign immunity from the state law claim brought against him in his individual capacity. Accordingly, Smith's Motion to Dismiss (Doc. 4) is due to be GRANTED as to Count Six.

## IV. Conclusion

For the foregoing reasons, Smith's Motion to Dismiss (Doc. 4) is due to be GRANTED. Hudson's Motion to Dismiss (Doc. 15) is due to be DENIED as to Counts One and Four and GRANTED as to Count Two. An Order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on April 11, 2022.

_____
L. Scott Coogler
United States District Judge

206770